IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRANDON LOHRAN WOODARD, § | | |
| TDCJ No. 1100860, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| V. § | No. 3:20-cv-1661-E-BN | |
| § | | |
| DIRECTOR, TDCJ-CID, § | | |
| § | | |
| Respondent. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

A Dallas County jury convicted Petitioner Brandon Lohran Woodard of capital murder, and the court sentenced him to life imprisonment. *See State v. Woodard*, No. F00-53218-M (194th Jud. Dist. Ct., Dall. Cnty., Tex. May 9, 2002); Dkt. No. 3 at 2; Dkt. No. 18-1, Ex. A. This judgment was affirmed on direct appeal. *See Woodard v. State*, No. 05-02-00839-CR, 2003 WL 1818142 (Tex. App. – Dallas Apr. 8, 2003); Dkt. No. 3 at 3. And Woodard failed to petition the Texas Court of Criminal Appeals (the CCA) for discretionary review. *See Woodard v. State*, No. PD-0663-03 (Tex. Crim. App.) (noting that an extension of time was granted on May 1, 2003 but that no petition was filed by September 26, 2003); Dkt. No. 3 at 3; Dkt. No. 18-1, Ex. B.

Woodard's capital murder conviction therefore became final when he failed to file a petition for discretionary review in September 2003. *See Phillips v. Quarterman*, No. 3:09-cv-1131-B, 2009 WL 1974302, at *2 (N.D. Tex. July 7, 2009) (citing *Roberts v. Cockrell*, 319 F.3d 690, 692 (5th Cir. 2003)); *Salinas-Tinoco v. Davis*, No. 3:18-cv-1781-G-BN, 2018 WL 3979865, at *3 (N.D. Tex. July 25, 2018) (collecting cases), *rec.*

*accepted*, 2018 WL 3973507 (N.D. Tex. Aug. 20, 2018).

And, because Woodard filed his first state habeas application no earlier than June 28, 2005, the date that he signed it, *see Ex parte Woodard*, WR-65,038-01 (Tex. Crim. App.); Dkt. No. 18-1, Ex. C (at 21), that "petition was not filed within the one-year period" that commenced in September 2003 and therefore "did not statutorily toll" the time to seek federal habeas relief. *Palacios v. Stephens*, 723 F.3d 600, 604 (5th Cir. 2013) (citing *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (citing, in turn, 28 U.S.C. § 2244(d)(2))). Neither did Woodard's remaining state habeas applications. *See Ex parte Woodard*, WR-65,038-02, -03, -04 (Tex. Crim. App.).

Nevertheless, Woodard, proceeding *pro se*, filed his first application for a writ of habeas corpus under 28 U.S.C. § 2254 as to the capital murder conviction on June 19, 2020, the date on which he certifies that he placed it in the prison mailing system. *See* Dkt. No. 3 at 12.[1]

United States District Judge Ada Brown referred the Section 2254 application to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference. The State responded. *See* Dkt. No. 18. And Woodard replied. *See* Dkt. No. 24.

The undersigned now enters these findings of fact, conclusions of law, and

---

[1] *See also* RULE 3(d), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."); *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018) ("We reaffirm that the operative date of the prison mailbox rule remains the date the pleading is delivered to prison authorities.").

recommendation that the Court should dismiss the habeas application with prejudice as time barred.

## Applicable Background

These facts are from the 2003 decision affirming Woodard's capital murder conviction:

> David McNulty, a passenger in Mark Hoesterey's Isuzu Rodeo, was shot and killed after his friends Mark Hoesterey and Clay Odom were robbed at gunpoint. The incident began when the three men were returning home after a night out. As they drove on Vickery Boulevard, a car behind them sped up, passed them, and parked in front of them, trapping the Rodeo between that front car and a white car behind the Rodeo.
> McNulty got out of the Rodeo and walked towards the back of the vehicle. As he did so, two black males approached the Rodeo from the front car. Diomedes McNeal, identified as the man who approached the front driver's side window, pointed a gun at Hoesterey and demanded money. McNeal pulled the keys from the ignition and got into the car. At this time, [Woodard] got into the back seat where Odom was; [Woodard] demanded Odom give [him] his wallet. Hoesterey and Odom surrendered their wallets to the assailants.
> Shortly thereafter, the assailants exited the Rodeo. Hoesterey got out of the vehicle and stepped towards the front. When he heard a gunshot, he lay on the ground until he heard a car drive away. He then ran to the back of the car and found McNulty on the pavement. In the meantime, Odom had also exited the vehicle and was running down the street when he heard the sound of the gun. Odom saw the white car turn around and drive towards Abrams Road. Odom tried to stop the white car, sticking his head in the driver's side window, but he fell out when the car sped up. Odom then ran to a nearby house for help. Odom returned to the scene with another man who, along with Hoesterey, attempted to perform CPR on McNulty. However, McNulty died as a result of the gunshot wound to his chest.
> While testifying, Hoesterey identified [Woodard] as the man in the back seat of the car during the robbery. He admitted, though, that in his statement he had not been certain if there was another man other than the one with the gun. Hoesterey had not identified anyone in a photo lineup. Odom testified that he was not sober during the robbery. He did not positively identify anyone in the photo lineup. He also stated he had not gotten a good look at the man in the back seat with him, but

> Odom did identify [Woodard] as someone who participated in the events that night.
>
> Keith Wilson testified he had been riding with McNeal and [Woodard] that night. Wilson stated the three of them, along with Cornelius Richardson, were driving around when McNeal stated he was "going to try to get him an insurance job." According to Wilson, McNeal pulled his car in front of Hoesterey's vehicle, and McNeal and [Woodard] approached Hoesterey's vehicle while Wilson stayed in McNeal's car. Wilson saw McNeal wrestling with a man then heard a gunshot. When McNeal got back into his car, he stated "something like" "he wouldn't give me his wallet." [Woodard] also got back into McNeal's car, and he had possession of two wallets. The four of them left the scene, and McNeal drove Wilson home without making any stops.
>
> Detective Vinyard testified he compared fingerprints he found in the Rodeo to those of [Woodard] and was able to match those fingerprints. He did not find matches with any of the other three men who had been in McNeal's car. Detective Muniz investigated the stolen credit cards. He discovered one card was used at an Exxon station in Duncanville shortly after the robbery and murder. From that security tape, Detective Muniz identified [Woodard] as being at the Exxon station at the same time the stolen credit card was used. That credit card was also used later that day at a Sack N'Save. [Woodard's] name appeared on the receipt for that transaction, but the Sack N'Save employee identified Richardson as the one who had signed [Woodard's] name.

*Woodard*, 2003 WL 1818142, at *1-*2.

## Legal Standards

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a one-year statute of limitations for federal habeas proceedings brought under 28 U.S.C. § 2254. *See* ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996, Pub. L. 104-132, 110 Stat. 1214 (1996). The limitations period runs from the latest of:

(A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United

> States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and exceptional circumstances," *United States v. Riggs,* 314 F.3d 796, 800 n.9 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)). "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

Taking the second prong first, "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th

Cir. 2009) (per curiam) (citation omitted). This "prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 136 S. Ct. at 756 (emphasis in original).[2]

But "'[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

And, most applicable here, a showing of "actual innocence" can also overcome AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

That is, the petitioner's new, reliable evidence must be enough to persuade the Court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329); *see also Johnson v.*

---

[2] *See, e.g.*, *Farmer v. D&O Contractors*, 640 F. App'x 302, 307 (5th Cir. 2016) (per curiam) (holding that because "the FBI did not actually prevent Farmer or any other Plaintiff from filing suit" but instead "advised Farmer that filing suit would have been against the FBI's interest" and "that the RICO claims could be filed after the investigation concluded," "[a]ny obstacle to suit was ... the product of Farmer's mistaken reliance on the FBI, and a party's mistaken belief is not an extraordinary circumstance" (citing *Menominee Indian Tribe*, 136 S. Ct. at 756-57)).

*Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The [United States] Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted)); *Acker v. Davis*, 693 F. App'x 384, 392-93 (5th Cir 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.' *Schlup*, 513 U.S. at 324, 327. When considering a gateway claim of actual innocence, the district court must consider all of the evidence, 'old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.' *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks and citations omitted). 'Based on this total record, the court must make "a probabilistic determination about what reasonable, properly instructed jurors would do."' *Id.* (quoting *Schlup*, 513 U.S. at 329). 'The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.' *Id.*" (citations modified)).

### Analysis

The only subsections of Section 2244(d)(1) that plausibly could apply to make the federal habeas petition timely are Subsections A and D. But Woodard's federal petition is untimely under Subsection A for the reasons explained at the outset.

And he has not demonstrated how the Section 2254 application is timely under Section 2244(d)(1)(D), the factual predicate provision of AEDPA's statute of limitations, which runs from "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015) (citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)).

As to the application of Subsection D, Woodard now alleges that he is actually innocent based on newly discovered evidence; that this newly discovered evidence shows that he was denied due process when the prosecution introduced false evidence at his trial – that his fingerprints were found on the Isuzu Rodeo; that the same evidence also shows that his trial counsel provided constitutionally ineffective assistance – by neither objecting to nor rebutting the prosecution's false evidence; and that, in affirming his conviction by relying on this false evidence, the state court of appeals denied him due process. *See* Dkt. No. 3.

The newly discovered evidence on which these claims all turn is a stipulation signed by the Dallas County District Attorney's Office and filed on October 16, 2019 in one of Woodard's state habeas proceedings providing that "[t]he parties stipulate that they are aware of no evidence that Applicant Brandon Woodard's fingerprints were collected from the vehicle in which the complainant was riding." Dkt. No. 6 at 13.

When considering allegedly new evidence under Subsection D, it matters when a habeas petitioner first knew of – or, through due diligence, could have discovered –

"the vital or principal facts underlying [the] claims" supported by the "new evidence." *Vega v. Stephens*, No. 3:14-cv-551-P-BK, 2015 WL 4459262, at *3 (N.D. Tex. July 20, 2015) (defining "the factual predicate" as "the vital or principal facts underlying [a petitioner's] claims" (citing *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007); *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012))); *see also Blackman v. Stephens*, No. 3:13-cv-2073-P-BN, 2016 WL 777695, at *5 (N.D. Tex. Jan. 19, 2016) ("Under Section 2244(d)(1)(D), the applicable date is the date on which vital facts are first discovered, not when evidence to support those facts is first acquired."), *rec. accepted*, 2016 WL 759564 (N.D. Tex. Feb. 26, 2016); *cf. Christian v. Bracy*, No. 2:18-CV-652, 2019 WL 2314631, at *3 (S.D. Ohio May 31, 2019) ("The term 'factual predicate' in § 2244(d)(1)(D) refers to factual evidence and events, not legal conclusions.").

And, even if "the 'new evidence' constitutes a 'factual predicate' within the meaning of Subsection D, that 'new evidence' [must] serve as the basis of a *cognizable* habeas claim." *E.g.*, *Glenn v. Cain*, Civ. A. No. 13-6595, 2014 WL 5040713, at *2 n.18 (E.D. La. Sept. 30, 2014) (collecting cases).

The "new evidence" here may therefore not support a stand-alone innocence claim, as a substantive claim of "actual innocence" is not recognized as an independent ground for federal habeas relief. *See Perkins*, 569 U.S. at 392 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993))); *see also, e.g.*, *House*, 547 U.S. at 554-55; *Reed v. Stephens*, 739 F.3d 753, 766 (5th Cir. 2014); *cf. Schlup*, 513 U.S. at 314 (distinguishing "procedural" claims of

innocence, which are based on a separate, underlying claim that a defendant was denied "the panoply of protections afforded to criminal defendants by the Constitution").

As to the remaining claims, Woodard knew of the vital facts to support a claim based on fingerprint evidence – whether a claim alleging a violation of due process or one alleging ineffective assistance of counsel – more than a decade before obtaining the 2019 stipulation to support such a claim. For example, in his initial state habeas application, filed in 2005, Woodard alleged that

> [t]he prosecutor knowingly used the perjured testimony of Detective Vineyard to convict the applicant at trial. At the applicant's pretrial Discovery hearing the prosecutor Ms. Miller testified under oath that there were no fingerprints found that matched the applicant or his codefendants.
> At the applicant's trial, prosecutor elicited testimony from detective Vineyard, under oath, that the detective found latent fingerprints from some unidentified object that matched fingerprints of the applicant. The prosecutor knowingly used the perjured testimony and/or knowingly failed to correct such testimony….

Dkt. No. 18-1 at 24 (cleaned up).

In sum, Woodard has not shown that his federal habeas petition is timely under Section 2244(d)(1).

Woodard also has not shown that he is entitled to equitable tolling. While he makes arguments related to difficulties in obtaining the 2019 stipulation and to slow downs and restrictions caused by the COVID-19 pandemic, *see* Dkt. No. 6 at 8-9, Woodard has not, for example, shown what extraordinary circumstance beyond his control prevented him from filing his Section 2254 habeas application within one year from his conviction becoming final (in September 2003) or proximate to August 2006,

after the CCA denied his initial state habeas application – in which he alleged the vital facts to support a claim based on the fingerprint evidence. *See Ex parte Woodard*, WR-65,038-01 (Tex. Crim. App. Aug. 16, 2006).

Turning last to actual innocence, which "'if proved, serves as a gateway through which a petitioner may pass [even if] the impediment is a procedural bar ... or ... expiration of the statute of limitations.'" *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018) (quoting *Perkins*, 569 U.S. at 386). But "a credible gateway 'claim [of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence ... that was not presented at trial.'" *Id.* (quoting *Schlup*, 513 U.S. at 324).

"Examples of 'new reliable evidence' are 'exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence.'" *Fratta v. Davis*, 889 F.3d 225, 232 (5th Cir. 2018) (quoting *Schlup*, 513 U.S. at 324). The 2019 stipulation offered by Woodard is like none of these.

It may impeach certain trial testimony related to whether Woodard's fingerprints were obtained from the Rodeo. But "as the Supreme Court has explained, 'impeachment evidence provides no basis for finding' actual innocence because 'the evidence is a step removed from evidence pertaining to the crime itself.'" *Riley v. Dir., TDCJ-CID*, No. 3:18-cv-2439-S-BN, 2021 WL 4355379, at *5 (N.D. Tex. Sept. 24, 2021) (quoting *Calderon v. Thompson*, 523 U.S. 538, 563 (1998)), *appealed filed*, No. 21-11062 (5th Cir.); *see also Lucas v. Johnson*, 132 F.3d 1069, 1076 n.3 (5th Cir. 1998) (explaining that new evidence of actual innocence must be "material, not merely

cumulative or impeaching" and thus capable of "produc[ing] acquittal at a new trial").

## Recommendation

The Court should dismiss Petitioner Brandon Lohran Woodard's application for a writ of habeas corpus under 28 U.S.C. § 2254 with prejudice as time barred.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 1, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE